# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JET AIR, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-23-899-D |
| ALLIANCE AIR PARTS, INC., | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff Jet Air, Inc.'s Motion to Quash and Memorandum of Law in Support of Its Motion to Quash Subpoena to Produce [Doc. No. 33]. Defendant Alliance Air Parts, Inc. filed a Response [Doc. No. 37], and Jet Air filed a Reply [Doc. No. 40].[1] The matter is fully briefed and at issue.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a cabin fire in a Cessna 550 Aircraft bearing Registration No. N22JA (hereinafter referred to as the "N22JA"). The fire allegedly started while one of Jet Air's employees attempted to install an oxygen bottle that had been purchased from Alliance. Due to extensive damage from the fire, the N22JA was declared a total loss.

---

[1] The Court refers to Plaintiff as "Jet Air" and Defendant as "Alliance."

[2] In its Motion, Jet Air states it "attempted to confer in good faith with Alliance via telephone and email on multiple occasions . . . ." Pl.'s Mot. at 1-2. However, "Alliance's counsel did not respond with a position on this Motion except to ask for a privilege log." *Id.* at 2. Despite Jet Air's statement to the contrary, this is not a "sincere attempt to resolve differences . . . ." *See id.* Indeed, it is unclear how there could have been any "sincere attempt" to resolve the issues raised when it does not appear the parties even discussed the substance of the Motion. Should future discovery disputes arise, the Court fully expects the parties to engage in the good-faith, sincere discussions contemplated by LCvR37.1.

After the fire, Jet Air filed a claim with its insurer, Allianz Global Risk US Insurance Company ("Allianz Global"), who in turn hired McLarens Aviation to investigate the circumstances surrounding the fire. Michael Staszel, an adjuster with McLarens, contacted Alliance to place it on notice of the claim and discuss the underlying fire. Around this time (approximately one month after the fire), two adjusters at McLarens—Mr. Staszel and Jack Gunka—authored a report entitled "McLarens Preliminary Investigation Report to Allianz Global Corporate & Specialty" (the "McLarens Report").

During discovery in this case, Alliance issued a subpoena [Doc. No. 32-2] to McLarens (the "McLarens Subpoena") seeking documents related to its investigation of the fire on behalf of Allianz Global. Jet Air filed the instant Motion seeking to quash the McLarens Subpoena on the grounds that it seeks information—namely, the McLarens Report—that qualifies as protected work product.[3]

---

[3] Although Alliance does not contest Jet Air's standing to challenge the McLarens Subpoena, "decisions applying Rule 45[(d)(3)(A)] require a court to consider the movants' standing even if it is not disputed." *Pub Serv. Co. of Okla. v. A Plus, Inc.*, CIV–10–651–D, 2011 WL 691204, at *2 (W.D. Okla. Feb. 16, 2011) (citing cases). As a general rule, "only the person to whom the subpoena is directed has standing to object to its issuance." *Id.* However, an exception exists "where the challenging party asserts a personal right or privilege with respect to the materials subpoenaed." *Id.* "To satisfy the standing requirement on this basis, a conclusory assertion that the subject documents 'are private, confidential, and proprietary' is insufficient; instead, the challenging party must specifically identify the personal right or privilege on which he relies." *Id.* at *3 (quoting *Hitachi Medical Systems America, Inc. v. Branch,* No. 5:09cv1575, 2010 WL 3222424, at *2 (N.D. Ohio Aug. 13, 2010)). Here, because Jet Air specifically asserts the information sought is protected by the work product doctrine, the Court concludes Jet Air has standing to challenge the McLarens Subpoena. *See, e.g.*, *Lindley v. Life Investors Ins. Co. of Am.*, No. 08-CV-379-CVE-PJC, 2010 WL 1837715, at *1 (N.D. Okla. Apr. 30, 2010) (concluding that defendant had standing to object to non-party subpoena based on attorney-client privilege where subpoena sought a prior deposition of defendant's counsel and privileged communications with them).

## DISCUSSION

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii). The party "moving to quash a subpoena has the burden to demonstrate good cause and/or the privilege to be protected." *Willis v. Progressive Direct Ins. Co.*, No. CV-22-349-SLP, 2023 WL 4305130, at *1 (W.D. Okla. June 30, 2023); *In re Grand Jury Proc.*, 616 F.3d 1172, 1183 (10th Cir. 2010) ("The burden of establishing the applicability of [the attorney-client] privilege rests on the party seeking to assert it." (internal quotation marks omitted)).

To establish that a document is protected work product, the moving party "must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party." *AKH Co. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 688 (D. Kan. 2014) (internal quotation marks omitted); Fed. R. Civ. P. 26(b)(3)(A). There are two primary considerations when determining whether a document was prepared in anticipation of litigation:

> The first is the causation requirement—the document in question must have been created because of the anticipation of litigation (i.e. to prepare for litigation or for trial). The second component imposes a reasonableness limit on a party's anticipation of litigation—the threat of litigation must be real and imminent. In addition, courts look to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work-product doctrine.

*Kannaday v. Ball*, 292 F.R.D. 640, 648-49 (D. Kan. 2013) (internal footnotes and quotation marks omitted).

Jet Air argues that the "documents and information sought in the Subpoena request McLarens' claim file and any and all documents related to the incident." Pl.'s Mot. at 5. But, Jet Air continues, the claim file "and any other materials in McLarens' possession are protected work product because McLarens was hired to investigate this accident on [Jet Air's] behalf." *Id.* Therefore, the McLarens investigation—and subsequent McLarens Report—was "completed for the purpose of initiating a subrogation claim with this Court and given that the aircraft was deemed a total loss – this lawsuit was the result." *Id.* In other words, according to Jet Air, "investigative material in McLarens' possession is work product resulting from the anticipation of this subrogation claim and therefore inadmissible." *Id.*

In response, Alliance takes issue with Jet Air's framing and argues there is a "rebuttable presumption that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made." Def.'s Resp. at 3-4 (quoting *Lindley v. Life Invs. Ins. Co. of Am.*, 267 F.R.D. 382, 399 (N.D. Okla. 2010)). Further relying on *Lindley*, Alliance contends it is "presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product." *Id.* (quoting *Lindley*, 267 F.R.D. at 299). Here, Alliance concludes, a "report, authored by non-attorneys a little over a month after the

4

alleged loss, before a denial of the claim from Defendant's insurer, and over twenty months before litigation was commenced, cannot be fairly said to have been authored solely to prepare for litigation." *Id.* at 6.

Upon consideration, the Court finds that Jet Air has not carried its burden of establishing that the information sought by the McLarens Subpoena is protected work product, and, therefore, the subpoena should not be quashed. Jet Air maintains the McLarens Report was prepared in anticipation of pursuing a subrogation claim against Alliance. *See* Pl.'s Mot., Ex. 4, ¶ 4. But several considerations undercut that contention.

First, as to the causation prong identified by the *Kannaday* court, the temporal proximity between the fire and completion of the McLarens Report suggests it was prepared to investigate the facts underlying the fire, not due to the anticipation of litigation. Allianz Global hired McLarens shortly after the cabin fire to investigate the circumstances surrounding the fire. *See* Pl.'s Mot., Ex. 2 [Doc. No. 33-2], ¶ 3. Around that same time, Mr. Staszel and Mr. Gunka authored the McLarens Report. This appears to have been approximately one month after the fire, which supports the notion that the McLarens Report was prepared in the ordinary course of business (or, at the very least, that preparing for litigation was not the motivating factor behind the McLarens Report). *See Falconcrest Aviation, L.L.C. v. Bizjet Int'l Sales and Support, Inc.*, No. 03-CV-577-TCK-SAJ, 2005 WL 8179742, at *2 (N.D. Okla. June 23, 2005) ("An insurance company has a duty to investigate and evaluate a claim to determine whether the claim is covered by its policy

5

with the insured. Thus, a routine investigation into a possibly resistible claim is within the ordinary course of business for an insurance company." (internal citation omitted)).[4]

Second, as to the reasonableness prong and even assuming the McLarens Report was created in anticipation of litigation, the temporal proximity between completion of the McLarens Report and the filing of this lawsuit—nearly two years—suggests that the threat of litigation was not imminent. It might be true that a subrogation claim against Alliance was a possibility, *see* Pl.'s Mot., Ex. 2, ¶ 4, but the "inchoate possibility, or even likely chance of litigation, does not give rise to work product." *Ledgin v. Blue Cross & Blue Shield,* 166 F.R.D. 496, 498 (D. Kan. 1996) (citations omitted). Instead, "[b]ecause litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity." *Marten v. Yellow Freight System, Inc.,* No. Civ. A. 96–2013–GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998) (citations and quotations

---

[4] In its Reply, Jet Air argues that, unlike the investigations in two of the cases Alliance relies on "where the insurer's work was performed as part of a defense to existing claims, the investigation and report in this matter were not created in the routine practice or ordinary course of business." Pl.'s Reply at 2. Instead, Jet Air argues, it "was and is investigating liability <u>for purposes of bringing and supporting the lawsuit</u> – not to defend against one." *Id.* (emphasis in original). It is unclear to the Court how this is a meaningful difference. In both situations, an insurance company is investigating the facts underlying a specific incident shortly after the incident occurred. Here, McLarens was investigating the fire to determine whether a potential subrogation claim had merit. Presumably, if McLarens had concluded that Alliance was not to blame for the fire, Jet Air would not have brought this action. Therefore, although litigation was a possibility based on the outcome of the McLarens Report, it is a stretch to claim the investigation "was a shift from the ordinary activities of an insurer." This is especially true when it very well could be argued that, in certain situations, evaluating potential subrogation claims falls within the ordinary business for insurance companies.

omitted). Jet Air provides the Court with no credible evidence supporting such a higher level of anticipation of litigation against Alliance.

## CONCLUSION

At the end of the day, it is Jet Air's burden to establish that the McLarens Subpoena seeks protected work product and, therefore, should be quashed. But Jet Air has not carried its burden. For this reason, and those fully set forth in this Order, Jet Air's Motion to Quash [Doc. No. 33] is **DENIED**. The parties shall bear their own costs and fees associated with the instant Motion.

**IT IS SO ORDERED** this 13th day of September, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge